John D. Winer, Esq. (SBN 91078)
Elana R. Jacobs, Esq. (SBN 303178)
Michael S. Reeder, Esq. (SBN 282193)
WINER, BURRITT & SCOTT LLP
1901 HARRISON STREET, SUITE 1100
OAKLAND, CALIFORNIA 94612
Email: elana@wmlawyers.com
Email: michael@wmlawyers.com
Tel (510) 433-1000
Fax (510) 433-1001

Attorneys for Plaintiffs
KEUNHO (CHRIS) PARK, FELICIA DODGE,
DANIEL J. PERE

# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEUNHO (CHRIS) PARK, an individual; FELICIA DODGE, an individual; DANIEL PERE, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, a governmental entity; FERDA SAKMAN, M.D., an individual; and DOES 1 thru 25, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1) Medical Malpractice – Professional Negligence;<br>2) Intentional Infliction of Emotional Distress;<br>3) Breach of Fiduciary Duty;<br>4) Assault;<br>5) Battery;<br>6) Sexual Battery (Civ. Code §1708.5);<br>7) Gender Violence and Sexual Assault (Civ. Code §52.4)<br>8) Sexual Harassment (Civ. Code §51.9)<br>9) Negligent Hiring, Supervision, and Retention |

///

///

**COMPLAINT FOR DAMAGES**

Plaintiffs, KEUNHO (CHRIS) PARK, FELICIA DODGE, and DANIEL PERE, ("Plaintiffs"), bring this Complaint against defendant UNITED STATES OF AMERICA, FERDA SAKMAN, M.D., and DOES 1-25, inclusive, and each of them (hereinafter referred to collectively as "Defendants"), and alleges as follows:

## JURISDICTION, VENUE AND CONDITIONS PRECEDENT

1. This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 because the defendants are the United States of America and/or employees of the United States of America.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because the events leading to the wrongful acts complained of herein and the resulting claims against Defendants herein arose in the County of Santa Clara, State of California.

3. Plaintiffs have fully performed all the necessary steps required before this action can be filed. In accordance with 28 U.S.C. § 2401(b) and §2675(a0, Plaintiffs timely served on or about June 7, 2021, Claims for Damage, Injury, or Death upon the U.S. Department of Veterans Affairs, Office of General Counsel. Plaintiffs received correspondence from the Department of Veterans Affairs on or around June 29, 2021, formally acknowledging that it received the Claims on June 7, 2021. By matter of law, the Claims are deemed denied if a federal agency fails to make a final disposition of the Claims within six months after they are filed. 28 U.S.C. § 2675(a). The U.S. Department of Veterans Affairs Office of General Counsel has to date failed to make a final disposition of Plaintiffs' Claims.

## PARTIES

4. Plaintiffs KEUNHO (CHRIS) PARK, FELICIA DODGE, and DANIEL PERE, are adult natural persons who at all relevant times residents of the State of California.

5. Defendant United States of America (hereinafter "US") is a named Defendant pursuant to 38 U.S.C. § 7316 because the negligence herein arose from medical treatment that Plaintiffs received from the physicians and staff of the VA Palo Alto Health Care System, San Jose VA Clinic (hereinafter "the VA"), some of whose names are unknown to Plaintiffs and who are sued herein as DOES 1 through 25. The VA Palo Alto Health Care System, San Jose VA Clinic, are operated by a

federal agency of the United States: Department of Veterans Affairs. Under the Federal Tort Claim Act (FTCA) the United States is the only proper defendant in a lawsuit under the FTCA, and therefore Plaintiffs sue the United States herein.

6. On information and belief, defendant FERDA SAKMAN, M.D. ("Sakman") was domiciled in the State of California during all relevant times. On further information and belief, defendant Sakman is, and at all times herein mentioned was, licensed by the State of California as a medical doctor specializing in psychiatry. On further information and belief, Sakman, at all times relevant herein, held herself out to possess that degree of skill, knowledge, and expertise possessed by other such professionals in the community, and in fact, provided medical services in Palo Alto, California, pursuant to her license.

7. Defendants DOES 1 through 25, inclusive, are sued herein under fictitious names because their true names and capacities, whether individual, associate, corporate, governmental, or otherwise, are unknown to plaintiffs. Plaintiffs will seek leave of this Court to amend this complaint to assert the true names and capacities of said defendants when same are ascertained. Plaintiffs are informed and believe, and hereon allege that each of the defendants designated herein as DOES 1 through 25 is legally responsible in some manner (as the agent, partner and/or employee of the defendant) for the events and happenings herein referred to and in doing the actions mentioned below was acting individually and as an agent of Defendants and caused damages directly and proximately thereby to Plaintiffs.

8. Plaintiffs are informed and believe, and hereon allege that at all times relevant herein, each of the Defendants were the agent, employee, supervisor, servant, and/or joint venturer of each of the remaining Defendants, and in doing the things hereafter alleged, each Defendant was acting within the course, scope and authority of such agency, employment, and/or joint venture, and with the consent and permission of each of the other Defendants. Plaintiffs are informed and believe, and hereon allege that all actions of each Defendant alleged in the causes of action in which this paragraph is incorporated by reference were ratified and approved by the officers and/or managing agents of every other Defendant.

///

**COMPLAINT FOR DAMAGES**

## FIRST CAUSE OF ACTION

### (Against All Defendants for General and Professional Negligence)

9. Plaintiffs allege herein the other paragraphs of this Complaint as though fully set forth.

10. In or around February 2019, Plaintiff Keunho (Chris) Park employed the VA to care for, diagnose, and treat him, and do all things necessary and proper in connection therewith. Park was treating at the VA because of military sexual trauma stemming from his service in the United States Army, and other related psychological issues. On information and belief, defendant Sakman was a licensed psychiatrist employed by the VA. Park became Sakman's patient in or around February 2019. Consequently, the psychiatrist-patient relationship was then and there established.

11. In or around November 2018, Plaintiff Felicia Dodge employed the VA to care for, diagnose, and treat her, and do all things necessary and proper in connection therewith. Dodge was treating at the VA because of military sexual trauma stemming from her service in the United States Military, and other related psychological issues. On information and belief, defendant Sakman was a licensed psychiatrist employed by the VA. Consequently, the psychiatrist-patient relationship was then and there established.

12. In or around fall of 2019, Plaintiff Daniel Pere employed the VA to care for, diagnose, and treat him, and do all things necessary and proper in connection therewith. Pere was treating at the VA because of traumatic incidents stemming from his service in the United States Marines, and other related psychological issues. On information and belief, defendant Sakman was a licensed psychiatrist employed by the VA. Consequently, the psychiatrist-patient relationship was then and there established.

13. At all times herein mentioned, Defendants knew, or should have known, by virtue of their professional education, training, and experience, that Plaintiffs were emotionally and physically vulnerable, and were particularly susceptible to being influenced, manipulated, and abused by persons like defendant Sakman, and that Sakman's failure to exercise due care in the performance of her care and treatment of Plaintiffs would cause Plaintiffs severe emotional distress, among other harms.

14. Defendants, and each of them, so negligently and carelessly treated, diagnosed, and cared for Plaintiffs so as to proximately cause their physical and mental conditions to worsen. Such negligent and careless treatment included, but was not limited to, the following acts and omissions:

   a. Sakman disclosed details about her personal life and her family to Plaintiffs during their treatment sessions;

   b. Sakman employed inappropriate techniques with Plaintiffs including screaming and crying therapy and astrology;

   c. Sakman invited Plaintiffs to participate in her experimental psychotherapy group where Sakman interpreted their lives using astrological maps and symbols;

   d. Sakman encouraged Plaintiffs to take Ayahuasca (DMT), a hallucinatory drug;

   e. Sakman told Plaintiffs details about her personal life, including about her trauma and her own drug use in South America;

   f. Sakman scheduled Park for the last session of the day and instructed him to exit from a different door so other VA employees and patients did not know how long they had met;

   g. Sakman scheduled Park for two and sometimes three sessions per week, which were not medically necessary or appropriate;

   h. Sakman took Park out for lunch and encouraged him to drink alcohol during lunch;

   i. Sakman drugged Park with Ayahuasca (DMT), by adding it to his drink without his knowledge;

   j. Sakman forbade Park from discussing therapy with anyone at the VA, or his own family;

   k. Sakman took Park on a trip to visit her family in Wisconsin;

   l. Sakman convinced Park to stop his therapy sessions with his VA psychologist;

   m. Sakman insisted that Park move in with her;

   n. Sakman misrepresented Park's drug and alcohol use in his medical records;

o. Sakman told Dodge her feelings were not real and instead were based on the moon's rotation;
p. Sakman mismanaged Dodge's medication, which caused Dodge to become paranoid and catatonic and require hospitalization; Sakman told Dodge that the "universe" told her that Dodge was "cured" and did not need medication anymore, causing Dodge to develop hypomanic symptoms;
q. Sakman abruptly terminated Plaintiffs' treatment following her trip to an Ayahuasca retreat in Costa Rica, without warning or a therapeutic process;
r. The VA failed to set up adequate or any policies and procedures for monitoring the care and treatment of patients;
s. The VA failed to set up adequate or any policies and procedures to supervise its staff, including Sakman;
t. The VA failed to use reasonable care in vetting Sakman prior to her employment/agency relationship and failed to periodically evaluate her during that time;
u. The VA failed to properly train Sakman and other staff, in treating patients, including regarding establishing and maintaining professional boundaries;
v. The VA failed to properly supervise and discipline Sakman for unprofessional conduct towards patients;
w. Defendants' failure to completely and accurately assess Plaintiffs' need for services;
x. Defendants' failure to completely and accurately diagnose Plaintiffs;
y. Defendants' failure to completely and accurately plan Plaintiffs' treatment;
z. Defendants' failure to meet the standard of care in the community in respect to the diagnosis, care, and treatment of Plaintiffs;
aa. Defendants' failure to recognize that Plaintiffs had poor boundaries and were susceptible to unhealthy attachments;
bb. The VA's failure to recognize that Sakman had poor boundaries and was susceptible to unhealthy attachments;

**COMPLAINT FOR DAMAGES**

cc. Sakman's failure to establish and maintain professional boundaries;

dd. Sakman's failure to recognize her own poor boundaries and her own susceptibility to unhealthy attachments;

ee. The VA's failure to provide Sakman with adequate education and training regarding the transference phenomenon;

ff. Sakman's failure to identify and handle the transference phenomenon;

gg. Sakman's abuse of the transference phenomenon with Plaintiffs;

hh. The VA's failure to provide defendant Sakman with adequate education and training regarding the phenomenon of counter-transference;

ii. Sakman's failure to employ counter-transference in response to Plaintiffs' transference;

jj. The VA's failure to seek immediate consultation and/or therapy after recognizing counter-transference issues in connection with Plaintiffs' treatment;

kk. Defendants' failure to refer Plaintiffs to another facility and/or psychotherapist after recognizing counter-transference issues in connection with Plaintiffs' treatment;

ll. Defendants' failure to terminate the patient-psychiatrist relationship with Plaintiffs after recognizing counter-transference issues in connection with Plaintiffs' treatment;

mm. Defendants' failure to properly monitor the progress or lack of progress of Plaintiffs during their course of treatment;

nn. The VA's failure to recognize that defendant Sakman was using unrecognized or below-standard counseling techniques;

oo. Sakman's use of unrecognized or below-standard counseling techniques;

pp. Defendants' failure to obtain Plaintiffs' informed consent regarding the type of psychiatry and/or counseling provided;

qq. Sakman's conducting counseling in such a manner that Plaintiffs became overly focused and dependent on the counseling;

rr. Sakman taking an inappropriate amount of control over Plaintiffs' lives through various inappropriate techniques utilized throughout treatment;

ss. Sakman's breach of confidentiality;

tt. Defendants' failure to treat Plaintiffs for their presenting problems and instead, permitting Sakman to develop her own agenda for treatment;

uu. Sakman making improper revelations to Plaintiffs;

vv. Sakman entering into non-sexual dual relationships with Plaintiffs;

ww. Defendants' failure to help Plaintiffs integrate into real life;

xx. Sakman's inappropriate encouragement of Plaintiffs to comfort, please, and listen to defendant Sakman, rather than vice versa;

yy. Sakman's failure to recognize the deterioration of Plaintiffs;

zz. The negligent retention of Sakman in employment/agency relationship by the VA after learning that defendant Sakman was unfit for the position for which she had been hired;

aaa. Failing to inform Plaintiffs that Sakman would be terminating them;

bbb. Defendants making numerous documentation errors in Plaintiff's progress notes;

15. The above allegations are not meant to be exhaustive, but rather are just some examples of Defendants' inappropriate conduct, which constitutes actions and omissions below the standard of care in the community, and which exist wholly and separately from the sexually inappropriate acts alleged in other parts of this Complaint. Many of the allegations in set forth above occurred before there was any hint of sexual activity in defendant Sakman's relationship with Plaintiffs. If defendant Sakman never acted sexually towards Plaintiffs and never performed the intentional misconduct alleged in other parts of this Complaint, she would still have violated the standard of care in her treatment of Plaintiffs as alleged above. None of the above allegations arose from, or in any way were incidental to, the sexual contact, sexual battery, or sexual exploitation.

16. Defendants, and each of them, breached their fiduciary duty to Plaintiffs.

17. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiffs have suffered, and continued to suffer, general damages, including, but not limited to, worsening of their mental conditions, severe emotional distress, and other general damages.

**COMPLAINT FOR DAMAGES**

18. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiffs have suffered, and continues to suffer, special damages, including, but not limited to, past and future medical expenses, past and future lost earnings, loss of earning capacity, lost benefits, and other special damages.

**SECOND CAUSE OF ACTION**

**(Against All Defendants for Intentional Infliction of Emotional Distress)**

19. Plaintiffs allege herein the other paragraphs of this Complaint as though fully set forth.

20. In order to cure a patient suffering from mental and/or emotional conditions such as Plaintiffs had, it is necessary for the psychiatrist providing therapy, by methods learned by her in her training, to establish what is known as the "transference phenomenon." The therapist encourages the trust of the patient and as that trust develops, the patient begins to "transfer" feelings and perceptions which he or she had for significant people (usually mother and father) in his or her past onto the therapist. This is an unconscious process that the patient does not realize is occurring. The therapist essentially "becomes" the parent in the patient's eyes. However, unlike the real parent, the therapist can remain "neutral" and nonjudgmental. The patient begins to place enormous trust in the therapist when the patient reveals his or her darkest secrets to the therapist.

21. Also, due to the natural imbalance in the relationship, in which a patient is looking towards the therapist for help, the therapist is not only in a position of tremendous power in the relationship to the patient, but also the therapist can exert a tremendous amount of influence on the patient. In the natural progression of therapy, the patient begins to transfer the juvenile fantasies he or she had for his or her parents onto the therapist. The appropriate therapist is then able to learn more and more about the patient's unconscious motivations and barriers and then is able to slowly and carefully help the patient gain insight into a series of "problems" that began in early childhood, which will help the patient overcome years of self-destructive behavior and will place the patient on the road to mental health.

22. On the other hand, at this point, the patient becomes extraordinarily vulnerable to the inappropriate suggestions and influence of the therapist. The patient can often be in a regressed state

**COMPLAINT FOR DAMAGES**

where he or she is reacting to the therapist the way a young child would react to his or her parents. It is usual for the patient to begin expressing sexual feelings towards the therapist and/or to attempt to act out on those feelings. When this occurs, the appropriate therapist maintains her neutral persona and helps the patient understand the source of the fantasies and feelings which the patient is experiencing. The inappropriate therapist exploits the situation and begins sexualizing the therapy for her own benefit, or at least to the patient's detriment. Because of the transference situation, for a therapist to engage in any type of sexual contact with a patient would be almost identical in its harmful effect to a parent engaging in a sexual relationship with a child.

23. Once a therapist allows a patient to believe his or her sexual fantasies can be fulfilled by the therapist, the patient is almost powerless to resist. If this transference phenomenon is abused by the therapist, not only sexually but in other ways too, it likely will not only worsen the mental health of the patient, but by the reason of the patient's resulting lack of confidence, it will also prevent the patient from being treated successfully in the future without a long-term hospitalization and long-term intense therapy, and even then, the patient cannot be totally put back together.

24. When Plaintiffs started treating with Defendants, Plaintiffs were suffering from mental

25. disorders and/or emotional problems. Because of the nature and type of said mental disorders and/or problems, Plaintiffs were highly susceptible to the suggestions of a psychiatrist/therapist who, by reason of her training, could take advantage of such disorders and conditions. Because of their disorders and conditions, Plaintiffs were particularly susceptible to believing that their therapist would actually care for them and look out for their best interests and, thus, they could easily be sexually pursued and otherwise inappropriately influenced by such therapist, especially considering the nature of therapy and the transference process as hereinafter alleged. Such actions upon the part of a therapist would severely aggravate Plaintiffs' then-existing conditions and cause them to be permanent in nature and further cause them to be deprived of additional treatment because of their lack of confidence in that treatment, and could cause them the need to be hospitalized for a long-term hospitalization as opposed to being able to be treated on an out-patient basis.

**COMPLAINT FOR DAMAGES**

26. Sakman started behaving sexually inappropriately towards Park within their first few sessions, starting in approximately February 2019. Sakman would touch Park's legs and back and hug him. She scheduled Park's appointments at the end of the day and often exceeded their scheduled appointment time, having him exit from another door that other patients/staff could not see. Sakman would grab Park's buttocks in the waiting room. Sakman frequently stroked Park, held his hands, and kissed him during sessions.

27. Sakman gave alcohol and drugs to Park, knowing that he had a history of drug and alcohol dependence. On one occasion, she encouraged him to drink alcohol while they were out for lunch and then Sakman invited him back to her house to have sexual intercourse. They proceeded to have sexual intercourse on many occasions. Sakman invited Park to move into her apartment, which he did. She tried to convince Park to marry her on multiple occasions. Sakman repeatedly demanded sexual intercourse from Park. She threatened to have him committed for suicidality if he did not comply.

28. As to Dodge, Sakman encouraged her to use the hallucinatory drug Ayahuasca and told her to reduce her sessions with her therapist. Sakman asked uncomfortable sexual questions to Dodge, including about her sexual history with her ex-husband. Knowing that Dodge had experienced sexual trauma, Sakman told Dodge she should have a sexual relationship with her other patient, Daniel Pere, saying they would be a great fit for each other. Sakman told Dodge that Pere needed someone in his life like Dodge because of Pere's prior relationships. Sakman made this suggestion on multiple occasions.

29. During one session, Sakman asked Dodge if she had had a sexual relationship with her best friend, who was female. When Dodge said she was only sexually interested in men, Sakman appeared to be disappointed. Sakman asked Dodge what type of girlfriend she was, and many other similar sexual questions that were unrelated to treatment. Sakman told Dodge that she was having a sexual relationship with her patient, Plaintiff Keunho Chris Park, which made Dodge uncomfortable. When Sakman told Dodge she was going to an Ayahuasca retreat for two weeks, Sakman told Dodge

**COMPLAINT FOR DAMAGES**

that this would make her abandoned, and that she hugged Park when he felt abandoned, and insisted on her hugging Dodge too. The hug was very uncomfortable for Dodge.

30. Sakman was also sexually inappropriate with Plaintiff Pere, starting in or around fall of 2019. Sakman told Pere she could tell that he wanted to have sex with her by the way he was sitting in the waiting room and in her office. When Pere denied it, Sakman said his desires were unconscious, which caused Pere to question his own thoughts and beliefs. Sakman repeated this comment multiple times. Sakman asked Pere how often he thought about her outside of their sessions. She asked Pere if he thought about her while he showered. After Pere made it clear to Sakman that he was not interested in her, Sakman started suggesting that Pere start a sexual relationship with Felicia Dodge, another patient. Sakman revealed to Pere that she was in a sexual relationship with Park during group therapy sessions.

31. Abuse of the transference process has long been recognized as a particularly dangerous harm because the therapist is in such a position of trust, and because the client is so vulnerable. As *Simmons v. USA* (1996) 805 F.2d 1363 explains: The crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative of a patient than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon. Simmons 805 F.2d at 1366.

32. By virtue of Sakman's medical education, training, and experience, and the nature of the psychiatrist-patient relationship, Sakman was in a position where others, such as Plaintiffs, had to trust that she had good intentions with respect to their care and treatment. Hence, the therapist-patient relationship that Sakman established with Plaintiffs gave her real and apparent power to affect their interests, and she abused such power and authority as set forth herein. Further, Defendants knew, or should have known, that Plaintiffs were vulnerable to emotional distress. Moreover, Defendants knew, or should have known, that Plaintiffs' personal feelings for Sakman would cause them to be even more vulnerable. For these reasons, Defendant's conduct was outrageous.

33. Sakman acted intending to cause emotional distress to Plaintiffs, or acted with the reckless disregard of the high probability that Plaintiffs would suffer emotional distress.

34. The US and DOES 1-25, and each of them, ratified Sakman's actions and failed to prevent her actions, despite having knowledge that she was unfit to treat patients. The US and DOES 1-25 knew, or should have known, that his inappropriate conduct was occurring.

35. Sakman's conduct in this respect did not arise out of the treatment relationship but rather existed wholly and separately from the treatment relationship. The sexual acts were not a part of Plaintiffs' medical treatment.

36. Plaintiffs have suffered, and continue to suffer, substantial, long-lasting feelings of anguish, fright, nervousness, grief, anxiety, worry, shock, humiliation, shame, despair, hopelessness, anger, sadness, fear, and other feelings, with some accompanying physical symptoms, all of which amounts to severe emotional distress that no reasonable person in a civilized society should be expected to bear.

37. As a proximate result of the conduct of Defendants, and each of them, as alleged above, Plaintiffs' physical and mental conditions worsened, causing Plaintiffs severe emotional distress, physical injury, and permanent mental injury

38. As a proximate result of the conduct of Defendants, and each of them, as alleged above, Plaintiffs have incurred, and will incur in the future, medical and other related out-of-pocket expenses in a sum unknown at this time. At the time of trial, Plaintiffs will seek damages for medical bills, past and future, and past and future other related expenses according to proof at the time of trial.

39. As a proximate result of the conduct of Defendants, and each of them, as alleged above, Plaintiffs have sustained and will in the future sustain, physical, mental, and emotional pain, suffering, and distress, all to their general damage in a sum to be proved at the time of trial.

### THIRD CAUSE OF ACTION

**(By Plaintiff Keunho Park Against All Defendants for Battery)**

40. Plaintiff Park alleges herein the other paragraphs of this Complaint as though fully set forth.

41. During the course of treatment of Plaintiff, defendant Sakman used her powers and abilities as a psychiatrist, and her education, training, and experience, to seduce Plaintiff, who was emotionally vulnerable, into an inappropriate relationship, despite knowledge that any kind of sexual relationship with a patient is illegal, unethical, and per se harmful. Each instance of contact with Plaintiff's person, sexual or otherwise, thus constituted a harmful and offensive touching.

42. Because of Plaintiff's extremely vulnerable physical and emotional state, and because of the transference phenomenon that had developed between Plaintiff Park and Sakman, as set forth in other parts of this Complaint, Plaintiff was unable to and did not consent to any contact by Sakman, sexual or otherwise, such that each instance of such sexual and other contact between Sakman and Plaintiff constituted a battery. Plaintiff was not able to consent to such contact any more than a minor child could consent under the law to the touching of an adult.

43. Defendant Sakman's conduct in this respect did not arise out of the treatment relationship but rather existed wholly and separately from the treatment relationship. The sexual misconduct as described above was not part of therapy.

44. As a legal and proximate result of Sakman's conduct, Plaintiff has suffered damages as set forth in other parts of this Complaint.

45. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiff has suffered, and continued to suffer, general damages, including, but not limited to, worsening of his mental conditions, severe emotional distress, and other general damages.

46. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiff has suffered, and continues to suffer, special damages, including, but not limited to, past and future medical expenses, past and future lost earnings, loss of earning capacity, lost benefits, and other special damages.

47. As a proximate result of the above, Plaintiff Park has suffered damages as otherwise alleged in this Complaint.

///

///

**COMPLAINT FOR DAMAGES**

## FOURTH CAUSE OF ACTION

### (Against All Defendants for Breach of Fiduciary Duty)

48. Plaintiffs allege herein the other paragraphs of this Complaint as though fully set forth.

49. Because of the position of authority and trust occupied by defendant Sakman and the nature of the therapy and the transference phenomenon, Plaintiffs were induced to place special trust and confidence in defendants the US and Sakman with respect to the course of the treatment.

50. Because of the relationship of confidentiality and trust fostered by Defendants and Plaintiffs' reliance on the confidence of each of them, a fiduciary relationship existed between Plaintiffs and Defendants.

51. Defendants fostered this fiduciary relationship from the beginning until the end of therapy.

52. Defendants failed to act to protect Plaintiffs from harm, and acted in a way to cause Plaintiffs harm by placing their interests ahead of the safety and well-being of Plaintiffs.

53. Defendants' actions in this regard constitute a breach of fiduciary relationship that existed between Plaintiffs and Defendants. As a direct and proximate foreseeable result of Defendant's conduct, Plaintiffs have been injured as previously set forth.

54. The US, and Does 1-25, and each of them, ratified Sakman's actions and failed to act to prevent them, despite having known that she was unfit to treat and/or be alone with patients, and knew, or should have known, that his inappropriate conduct was occurring.

55. As a proximate result of the above, Plaintiffs have suffered damages as otherwise alleged in this Complaint.

56. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiffs have suffered, and continue to suffer, general damages, including, but not limited to, worsening of their mental conditions, severe emotional distress, and other general damages.

57. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiffs have suffered, and continue to suffer, special damages, including, but not limited to, past and future

medical expenses, past and future lost earnings, loss of earning capacity, lost benefits, and other special damages.

## FIFTH CAUSE OF ACTION

**(Against All Defendants for Sexual Harassment in Violation of Civil Code, § 51.9)**

58. Plaintiffs herein repeat and re-allege as though fully set forth at length each and every paragraph of this Complaint.

59. At all times herein mentioned, Civil Code section 51.9 was in full force and effect, and prohibited sexual harassment in the context of certain business, service, and professional relationships, including the physician-patient relationship.

60. A business, service and professional relationship existed between Plaintiffs and Defendants, as Sakman was the Plaintiffs' treating psychiatrist and therapist.

61. Sakman made sexual advances, solicitations, sexual requests, and engaged in other verbal, visual, and physical conduct of a sexual nature, or of a hostile nature based on gender, that were unwelcome to Plaintiffs, and that were severe or pervasive.

62. Because of Plaintiffs' symptoms and vulnerabilities, Plaintiffs were unable to easily terminate the psychiatrist-patient and therapist-patient relationship.

63. Sakman's conduct was done within the course and scope of her employment/agency relationship with the US, DOES 1-25, and each of them.

64. The US and DOES 1-25, and each of them, ratified Sakman's actions and failed to act to prevent her actions, despite having knowledge that she was unfit to treat patients. The US and DOES 1-25 knew, or should have known, that this inappropriate conduct was occurring.

65. As a legal result of the above, Plaintiffs have suffered damages as otherwise alleged in this Complaint.

66. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiffs have suffered, and continue to suffer, general damages, including, but not limited to, worsening of their mental conditions, severe emotional distress, and other general damages.

67. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiffs have suffered, and continue to suffer, special damages, including, but not limited to, past and future medical expenses, past and future lost earnings, loss of earning capacity, lost benefits, and other special damages.

## SIXTH CAUSE OF ACTION

**(By Plaintiff Keunho Park Against All Defendants for Negligence Per Se**

**[Violation of Business & Professions Code, § 729])**

68. Plaintiff Park herein repeats and re-alleges as though fully set forth at length each and every paragraph of this Complaint.

69. At all times herein mentioned, Business & Professions Code section 729 was in full force and effect and prohibited therapists from engaging in any sexual contact with a patient or client, and made any such sexual contact a public offense punishable by fines, imprisonment, or both.

70. At all times herein mentioned, Defendant Sakman was a licensed psychiatrist.

71. At all times herein mentioned, Plaintiff Park was a patient of Defendants, and was of the class of persons that Business & Professions Code section 729 was designed to protect.

72. During the period of time that Plaintiff Park was receiving treatment from Defendants, Defendant Sakman engaged in sexual contact with Plaintiff within the meaning of Business & Professions Code section 729, subpart (c), and Penal Code section 243.4. Defendant Sakman thereby violated Business & Professions Code section 729, which violation proximately caused injury to Plaintiff.

73. Sakman's conduct was done within the course and scope of her employment/agency relationship with the US, DOES 1-25, and each of them.

74. The US and DOES 1-25, and each of them, ratified Sakman's actions and failed to act to prevent her actions, despite having knowledge that she was unfit to treat patients. The VA and DOES 1-25 knew, or should have known, that this inappropriate conduct was occurring.

75. As a legal result of the above, Plaintiff has suffered damages as otherwise alleged in this Complaint.

- 16 -

**COMPLAINT FOR DAMAGES**

76. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiff has suffered, and continued to suffer, general damages, including, but not limited to, worsening of his mental conditions, severe emotional distress, and other general damages.

77. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiff has suffered, and continues to suffer, special damages, including, but not limited to, past and future medical expenses, past and future lost earnings, loss of earning capacity, lost benefits, and other special damages.

## SEVENTH CAUSE OF ACTION

**(By Plaintiff Keunho Park against All Defendants for Sexual Battery in Violation of Civil Code, § 1708.5)**

78. Plaintiff Park realleges herein the other allegations of this Complaint.

79. At all times herein mentioned, Civil Code section 1708.5 was in effect, and prohibited sexual battery.

80. Knowing that sexual relations with a patient is illegal, unethical, and per se harmful, defendant Sakman acted with the intent to cause a harmful of offensive touching of Plaintiff's "private parts," as defined by California Civil Code §1708.5(d), and a harmful, offensive touching resulted in each instance when defendant Sakman engaged in sexual contact with Plaintiff.

81. Because of Plaintiff's extremely vulnerable physical and emotional state, and because of the transference phenomenon that had developed between Plaintiff and defendant Sakman, as set forth in other parts of this Complaint, Plaintiff was unable to and did not consent to any contact by defendant Sakman, sexual or otherwise, such that each instance of such sexual and other contact between defendant Sakman and Plaintiff constituted a battery. Plaintiff was not able to consent to such contact any more than a minor child could consent under the law to the touching of an adult.

82. Defendant's conduct in this respect did not arise out of the treatment relationship but rather existed wholly and separately from the treatment relationship. The sexual misconduct as described above was not part of counseling.

83. As a legal and proximate result of defendant Sakman's conduct, Plaintiff has suffered damages as set forth in other parts of this Complaint.

84. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiff has suffered, and continued to suffer, general damages, including, but not limited to, worsening of his mental conditions, severe emotional distress, and other general damages.

85. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiff has suffered, and continues to suffer, special damages, including, but not limited to, past and future medical expenses, past and future lost earnings, loss of earning capacity, lost benefits, and other special damages.

## EIGHTH CAUSE OF ACTION

**(By Plaintiff Keunho Chris Park Against All Defendants for Sexual Abuse by Therapist in Violation of Civ. Code, § 43.93)**

86. Plaintiff Park realleges herein the other allegations of this Complaint.

87. At all times herein mentioned, Civil Code § 43.93 was in effect. Section 43.93 prohibits "sexual contact" (the "touching of an intimate part of another person," including sexual intercourse and oral copulation) between a "psychotherapist" (including a physician specializing in the practice of psychiatry) and patient during the time the patient is receiving psychotherapy from the psychotherapist, and also during the two-year period after the termination of treatment.

88. At all times herein mentioned, defendant Sakman was "psychotherapist" within the meaning of Civil Code § 43.93.

89. Defendant Sakman violated Civil Code § 43.93 by engaging in sexual contact with Plaintiff during his treatment, as set forth in other parts of this Complaint.

90. As a legal and proximate result of defendant Sakman's conduct, Plaintiff has suffered damages as set forth in other parts of this Complaint.

91. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiff has suffered, and continued to suffer, general damages, including, but not limited to, worsening of his mental conditions, severe emotional distress, and other general damages.

92. As a legal and proximate result of Defendants' conduct, as set forth above, Plaintiff has suffered, and continues to suffer, special damages, including, but not limited to, past and future medical expenses, past and future lost earnings, loss of earning capacity, lost benefits, and other special damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For special damages according to proof;

2. For general damages according to proof;

4. For attorney fees under Civil Code sections 51.9(b) and 52(b);

5. For interest pursuant to Civil Code sections 3287, 3288, and 3291, and as otherwise permitted by law;

6. For costs of suit herein; and

7. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED: December 14, 2021          WINER, BURRITT & SCOTT, LLP

By: _____
John D. Winer, Esq.
Elana R. Jacobs, Esq.
Michael S. Reeder, Esq.
Attorneys for Plaintiffs
KEUNHO (CHRIS) PARK
FELICIA DODGE
DANIEL PERE